# United States Tax Court

T.C. Memo. 2026-60

DAVID J. MATTO AND KRISTA M MATTO,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 18012-24.                    Filed July 21, 2026.

————————

David J. Matto and Krista M Matto, pro sese.

*David A. Abernathy* and *Patsy A. Clarke*, for respondent.


## MEMORANDUM OPINION

LAUBER, *Judge*: The Internal Revenue Service (IRS or respondent) issued petitioners a Notice of Final Determination disallowing for tax year 2020 their claim for abatement of interest, and they sought review in this Court. *See* § 6404(h).[1] Respondent has filed a Motion for Summary Judgment contending that there are no disputes of material fact and that he is entitled to judgment as a matter of law. We agree and will grant the Motion.

### *Background*

The following facts are derived from the parties' pleadings and Motion papers, including the attached Declarations and Exhibits. *See*

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[*2] Rule 121(c). Petitioners resided in Hawaii when they timely petitioned this Court.

Petitioners timely filed Form 1040, U.S. Individual Income Tax Return, for 2020.[2] They included with this return Schedule E, Supplemental Income and Loss, which reported net income of $40,083. Of that total $17,490 was attributable to Ala Moana Dental Care, Inc., and $16,212 was attributable to Diamond Head Dental Care Corp. (collectively, S corporations).

On December 18, 2023, petitioners filed Form 1040–X, Amended U.S. Individual Income Tax Return, for 2020. In the box captioned "Explanation of Changes" they indicated that they were amending their return because the S corporations had issued to them, for the 2020 taxable year, revised Schedules K–1, Shareholder's Share of Income, Deductions, Credits, etc. The S corporations had received employee retention credits (ERCs) in 2023 and had amended their 2020 corporate returns to revise downward their previously claimed deductions for qualified wages. The revised Schedules K–1 accordingly reported increased income allocations to petitioners.

On their amended Schedule E for 2020 petitioners reported additional income of $133,305 and additional tax due of $37,546, which they paid. On April 18, 2024, the IRS informed them that their Form 1040–X had been processed and that their account had been adjusted to reflect the additional income reported and tax paid. Four days later the IRS informed them that they owed underpayment interest of $5,438 for 2020. The IRS accordingly reduced their overpayment for 2023 by $5,438 and applied that sum to their 2020 account.

In July 2024 petitioners submitted Form 843, Claim for Refund and Request for Abatement, requesting that the $5,438 of interest be refunded. They checked the box stating that abatement was justified because they had "reasonable cause or other reason allowed under the law (other than erroneous written advice)." In an attached letter they

---

[2] In March 2021 the IRS provided relief to "any person with a Federal income tax return filed on Form 1040." *See* I.R.S. Notice 2021-21, 2021-15 I.R.B. 986, 986. For those taxpayers, "the due date for filing Federal income tax returns in the Form 1040 series . . . having an original due date of April 15, 2021, is automatically postponed to May 17, 2021." *Ibid.* As a result of the postponement, "the period beginning on April 15, 2021, and ending on May 17, 2021, will be disregarded in the calculation of any interest, penalty, or addition to tax for failure to file the Federal income tax returns . . . [and those amounts will instead] begin to accrue on May 18, 2021." *Ibid.*

**[\*3]** urged that "interest should not have been applied as the ERC funds were not received until 2023, the same year we amended our 2020 return." They alleged that, during "a phone call with [an] IRS Agent," they had been informed "that there was no interest charged for 2020" and that they should disregard the IRS notice to the contrary. They submitted a letter from their accountant reiterating their position.

On September 17, 2024, the IRS issued petitioners a Final Determination denying their request for interest abatement because "there was no unreasonable error or delay [by the IRS] relating to the performance of a ministerial or managerial act." The letter explained:

> Taxpayers requesting interest abatement on Form 1040 underpayments that are attributable to the deductions for qualified wages/health plan expenses, as those deductions have been reduced by Employee Retention Credit (ERC) flow-through adjustments, are ineligible for interest abatement under I.R.C. § 6404(e)(1).

Petitioners timely petitioned this Court for review. On April 9, 2026, respondent filed a Motion for Summary Judgment, contending that his determination to deny their claim for interest abatement was not an abuse of discretion. Petitioners timely responded to the Motion.

*Discussion*

I. *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. *See FPL Grp., Inc. & Subs. v. Commissioner*, 116 T.C. 73, 74 (2001). We may grant summary judgment when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Rule 121(a)(2); *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520. Finding no material facts to be in genuine dispute, we conclude that the question posed by respondent's Motion may be adjudicated summarily.

[*4] II.    *Governing Standards for Interest Abatement*

Interest on a Federal income tax deficiency generally begins to accrue on the due date for the tax return and continues to accrue, compounding daily, until payment is made. *See* §§ 6151(a), 6601(a), 6622(a). Section 6621(a)(2) imposes interest at the Federal short-term rate, determined under subsection (b), plus three percentage points.

This Court reviews the denial of a request for interest abatement for abuse of discretion. *See* § 6404(h)(1). Abuse of discretion occurs if the IRS bases its denial "on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *King v. Fleming*, 899 F.3d 1140, 1147 (10th Cir. 2018) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)); *see also Woodral v. Commissioner*, 112 T.C. 19, 23 (1999). We generally lack jurisdiction to review the mathematical aspects of interest computations. *See Urbano v. Commissioner*, 122 T.C. 384, 390 (2004); *see also Med James, Inc. v. Commissioner*, 121 T.C. 147, 151 (2003).

We can uphold a determination to deny interest abatement only on the grounds the IRS invoked when making its determination. *See SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943). The IRS must clearly set forth these grounds so the Court does not have to guess how the IRS arrived at its decision. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196–97 (1947); *see also Kasper v. Commissioner*, 150 T.C. 8, 23 n.17 (2018) (explaining that the *Chenery* doctrine applies when the Court reviews an IRS determination for abuse of discretion). We consider only the arguments the taxpayer brought to the IRS's attention when it was considering the abatement claim. *See Wright v. Commissioner*, T.C. Memo. 2004-69, 87 T.C.M. (CCH) 1103, 1105 (first citing *Stewart v. Commissioner*, T.C. Memo. 2003-106, 85 T.C.M. (CCH) 1164, 1166 n.5; and then citing *Magana v. Commissioner*, 118 T.C. 488, 493 (2002)), *aff'd*, 125 F. App'x 547 (5th Cir. 2005).

Section 6404(e)(1) provides in pertinent part that the IRS may abate the assessment of interest on any underpayment of tax to the extent there has occurred an "unreasonable error or delay by an officer or employee of the [IRS] (acting in his official capacity) in performing a ministerial or managerial act."[3] A "[m]*inisterial act* means a procedural

---

[3] Section 6404(e)(1) grants this authority to the Secretary of the Treasury or his delegate, *see* § 7701(a)(11)(B), and the Secretary of the Treasury has delegated interest abatement authority to the IRS, *see also* Treas. Reg. § 301.6404-2(a)(1). Section 6404(h)(1) grants us jurisdiction to review a failure to abate interest only if the

**[\*5]** or mechanical act that does not involve the exercise of judgment or discretion, and that occurs during the processing of a taxpayer's case after all prerequisites to the act, such as conferences and review by supervisors, have taken place." Treas. Reg. § 301.6404-2(b)(2). A "[*m*]*anagerial act* means an administrative act that occurs during the processing of a taxpayer's case involving the temporary or permanent loss of records or the exercise of judgment or discretion relating to management of personnel." *Id.* subpara. (1). A decision concerning the proper application of Federal tax law is neither a managerial nor a ministerial act. *Id.* para. (b).

III.   *Analysis*

The Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, 134 Stat. 281 (2020), was enacted in response to the COVID–19 pandemic. CARES Act § 2301, 134 Stat. at 347–51, created a temporary ERC against applicable employment taxes for eligible employers that paid qualified wages to specified employees between March 12, 2020, and January 1, 2021. But Congress required that an employer claiming this credit reduce its deduction for qualified wages by the amount of the ERC. *Id.* § 2301(e), 134 Stat. at 349; I.R.S. Notice 2021-20, 2021-11 I.R.B. 922, 925. The IRS issued guidance explaining that "a reduction in the amount of the deduction allowed for qualified wages . . . caused by receipt of the [ERC] occurs for the tax year in which the qualified wages were paid or incurred," not for the year in which the ERC funds were received. *See* I.R.S. Notice 2021-49, 2021-34 I.R.B. 316, 322; *see also* Notice 2021-20, 2021-11 I.R.B. 922.

Petitioners timely filed their 2020 return and paid the tax shown as due. In December 2023 they filed an amended 2020 return reporting and paying additional tax because the S corporations had received ERCs. Since the increased tax for 2020 shown on the Form 1040–X was due May 17, 2021, *see* Notice 2021-21, 2021-15 I.R.B. 986, underpayment interest began to accrue automatically on the following day, until the tax owed was paid in full, *see* §§ 6151(a), 6601(a). Petitioners do not dispute the accuracy of the interest computation.

---

taxpayer satisfies section 7430(c)(4)(A)(ii), which pertains to the taxpayer's net worth. *See* § 7430(c)(4)(A)(ii) (cross-referencing 28 U.S.C. § 2412(d) (1986), which establishes the net worth requirement). Respondent does not deny that petitioners meet this requirement. *See Porter v. Commissioner*, T.C. Memo. 2022-25, 123 T.C.M. (CCH) 1133, 1134 n.4.

**[\*6]**   Section 6404(e) authorizes the Secretary to abate interest attributable to unreasonable errors or delays by the IRS in performing a ministerial or managerial act.  Although petitioners requested abatement of interest on their Form 843, they supplied no evidence that the IRS could be charged with "unreasonable error[s] or delay[s]" in the processing or examining of their return.  *See* § 6404(e)(1)(A).  Instead, petitioners checked the box on Form 843 asserting that they could establish "[r]easonable cause or other reason allowed under the law (other than erroneous written advice) . . . for not assessing a penalty or addition to tax."  That box does not apply to abatement of interest because "[r]easonable cause is never the basis for abating interest."  Internal Revenue Manual 20.2.7.1.1 (Dec. 20, 2023); *see also* § 6404(e).

In letters attached to their Form 843 petitioners urged two other grounds for abatement.  First, they contended that interest should be abated because they were "told on a phone call with [an] IRS Agent" that no interest would be charged on the additional tax due.  We accept petitioners' representation that they received this advice.  But as we have previously held, erroneous oral advice from an IRS employee is not binding on the Commissioner.  *See Goldman v. Commissioner*, T.C. Memo. 1981-223, 41 T.C.M. 1435, 1436; *O'Reilly v. Commissioner*, T.C. Memo. 1974-261, 33 T.C.M. (CCH) 1153, 1154–55; *Estate of Noonan v. Commissioner*, T.C. Memo. 1969-70, 28 T.C.M. (CCH) 388, 389; Statement of Procedural Rules, 26 C.F.R. § 601.201(k).  In any event, the advice at issue concerned the proper application of Federal tax law.  A decision concerning the proper application of Federal tax law is neither a managerial nor a ministerial act.  Treas. Reg. § 301.6404-2(b).

Second, petitioners contended that they should not have to pay interest for tax year 2020 because they "never owed any [additional] taxes until early 2023 when the ERC was received and the return amended."  We disagree.  Petitioners' Form 1040–X correctly reported an increased amount of tax due for tax year 2020.  Underpayment interest began to accrue automatically on May 18, 2021, the day after the due date for their 2020 return.  *See* § 6601(a); Notice 2021-21, 2021-15 I.R.B. 986.  Applicable IRS guidance confirmed that point.  *See* Notice 2021-49, 2021-34 I.R.B. 316; *see also* Notice 2021-20, 2021-11 I.R.B. 922.  In their Response to the Motion, petitioners concede that they "were required under then-applicable guidance to amend their prior-year [i.e., their 2020] return" and "that the interest accrued as a matter of mathematical operation under I.R.C. §§ 6151(a) and 6601(a)."  An IRS officer does not abuse his discretion when he follows published IRS guidance.  *See Mukhi v. Commissioner*, 162 T.C. 177, 191–92 (2024), *supplemented*

**[\*7]** *by* 163 T.C. 150 (2024); *see also Holley v. Commissioner*, T.C. Memo. 2024-54, at \*8–9; *Zienkowski v. Commissioner*, T.C. Memo. 2024-39, at \*9.[4]

Finding no abuse of discretion in any respect, we will grant summary judgment for respondent.

To reflect the foregoing,

*An appropriate order and decision will be entered.*

---

[4] Petitioners advance two other arguments in their Response to the Motion. But our review is limited to the two arguments (discussed in the text) that petitioners advanced and that the IRS considered when reviewing their Form 843. *See Wright*, 87 T.C.M. at 1105 (first citing *Stewart*, 85 T.C.M. (CCH) at 1166 n.5; and then citing *Magana*, 118 T.C. at 493). We accordingly have no need to address their new arguments.